IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| S.B., by and through her father, W.B., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JULIE HAMOS, in her official capacity ) <br> as Director of the Illinois Department ) <br> of Healthcare and Family Services, ) <br> ) <br> Defendant. ) | No. 12-cv-03077 |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter comes before the Court on Plaintiff's Verified Motion for Temporary Restraining Order (d/e 11) ("Motion"). For the reasons that follow, the Motion is GRANTED.

I. BACKGROUND

On March 8, 2012, Plaintiff filed a four-count Complaint (d/e 1) against Defendant, Julie Hamos, in her official capacity as Director of the Illinois Department of Healthcare and Family Services. In Count I

of the Complaint, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that Defendant is violating the federal Medicaid Act, 42 U.S.C. § 1396 et seq., because Defendant has failed and continues to fail to provide Plaintiff with medically necessary services that Defendant is mandated to provide under the Early and Periodic Screening, Diagnostic, and Treatment Services ("EPSDT") program of the Medicaid Act. Plaintiff also alleges, pursuant to § 1983, that Defendant is in violation of the Americans with Disabilities Act ("ADA") (Count II) and the Rehabilitation Act (Counts III and IV). Plaintiff seeks declaratory and injunctive relief in Counts I, II, and III and seeks damages in Count IV.

According to the Complaint, Plaintiff, S.B., is a Medicaid-eligible, 16-year-old girl who suffers from the following conditions: ADHD (Combined Type), Post-Traumatic Stress Disorder, Oppositional Defiant Disorder, Depressive Disorder, Sexual Abuse Victim, Sexual Abuse Perpetrator, and Mild Mental Retardation.

On April 30, 2011, Plaintiff was admitted to Lincoln Prairie Behavioral Health Center ("Lincoln Prairie") in Springfield, Illinois.

After her discharge from Lincoln Prairie, Plaintiff was directly admitted to Riverside Academy ("Riverside") in Wichita, Kansas, a psychiatric residential treatment facility. Blue Cross/ Blue Shield ("Blue Cross"), Plaintiff's private health insurance carrier, paid for her treatment at Riverside through April 2012. While at Riverside, Plaintiff attended school and participated in recreational activities.

Effective April 2012,[1] Blue Cross denied authorization for Plaintiff's continued treatment at Riverside. Plaintiff alleges that Blue Cross also denied authorization for treatment in a step-down residential treatment facility because Blue Cross alleged that such treatment is not a covered benefit.

Plaintiff alleges that, in a report dated February 27, 2012, Plaintiff's therapist at Riverside advised that Plaintiff should be placed in a "step-down facility closer to [the] primary care givers upon successful

---

[1] The Motion states that Blue Cross denied authorization for Plaintiff's treatment at Riverside effective April 2012, but the Complaint states that Blue Cross denied that authorization effective March 2, 2012. See Compl. ¶ 80. The Court notes that, for purposes of deciding this Motion, the Court need not determine which date is correct.

discharge from Riverside Academy." Pl.'s Mem. Ex. E. The Complaint also states that Mary Dobbins, M.D., recommended that Plaintiff receive residential treatment.[2]

Plaintiff alleges that, although Defendant was made aware of Plaintiff's need to be placed in a step-down residential treatment facility on February 28, 2012, Defendant has not attempted to make arrangements or provide funding for Plaintiff to be placed in such a facility.

Plaintiff also alleges that she is currently unable to safely reside in her family's home. Plaintiff states that she is at risk for further hospitalization or "institutionalization" if she does not receive treatment in a step-down residential treatment facility closer to her family. Plaintiff states that, when in the hospital, she is unable to attend school or leave the hospital. Plaintiff also alleges that the cost of treatment at a step-down residential treatment facility is approximately one-third the

---

[2] The Complaint does not indicate the date of Dr. Dobbins' recommendation. However, attached to the Motion as Exhibit D is a report stating that Dr. Dobbins recommended that Plaintiff receive residential treatment. The report reflects that it was signed by Dr. Dobbins on April 15, 2011.

cost of treatment as a psychiatric hospital.

Plaintiff asserts that she needs to be placed in a step-down residential treatment facility "for the maximum reduction of her mental disability and for the restoration of her to the best possible functional level." Pl.'s Mot. 2; Compl. ¶ 88. Plaintiff states that "[u]nless [she] receives the necessary intensive residential services, she will likely be at risk for many future hospitalizations." Compl. ¶ 89. Plaintiff also states that she requires residential treatment "to correct or ameliorate" her mental and behavioral conditions.

On May 22, 2012, Plaintiff filed the Motion for Temporary Restraining Order. Plaintiff seeks a temporary restraining order ("TRO") requiring Defendant to provide Plaintiff with Medicaid coverage for placement in a residential treatment facility found to be medically necessary, as required under the EPSDT provisions of the Medicaid Act. On the same day, Plaintiff filed a separate Motion for Preliminary Injunction (d/e 9), which the Court will consider at a later time.

On May 24, 2012, the Court held a hearing on the Motion for TRO. Counsel for Plaintiff and Defendant appeared in person. Plaintiff's father also appeared in person. The Court heard argument on the Motion. Plaintiff's counsel explained that Plaintiff is currently in Riverside but is scheduled to be discharged on May 25, 2012. At the conclusion of arguments, the Court orally granted the Motion. The Court now sets forth its decision in further detail.

## II. JURISDICTION AND VENUE

Federal subject matter jurisdiction over Counts I through IV exists pursuant to 28 U.S.C. § 1331, as each count asserts a claim that arises under federal law. Venue is proper because Defendant is located in Springfield, Illinois, which is in this judicial district, and a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district. See 28 U.S.C. § 1391.

## III. ANALYSIS

Plaintiff requests the Court to enter a TRO ordering Defendant to provide Medicaid coverage for placement in a residential treatment

facility found to be "medically necessary" as required under the EPSDT provisions of the Medicaid Act.  See 42. U.S.C. § 1396 et seq.

To obtain a TRO, a movant must show that:  (1) she is reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) she will suffer irreparable harm that, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest.  See Joelner v. Vill. of Washington Park, Illinois, 378 F.3d 613, 619 (7th Cir. 2004) (stating requisite elements for a TRO); Goodman v. Illinois Dep't of Fin. and Prof'l Regulation, 430 F.3d 432, 437 (7th Cir. 2005) (stating that a movant bears the burden of proof).  "If the movant can meet this threshold burden, then the inquiry becomes a 'sliding scale' analysis where these factors are weighed against one another." Joelner, 378 F.3d at 619.  "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." Roland Machinery Co. v. Dresser Industries Inc. 749 F.2d 380, 387 (7th Cir. 1984).

Here, all the factors weigh in favor of granting a TRO.

1. Plaintiff Has Shown a Reasonable Likelihood of Success on the Merits

In the Motion, Plaintiff requests this Court to enter a TRO ordering Defendant to provide Plaintiff with Medicaid coverage for placement in a residential treatment facility found to be medically necessary as required under the EPSDT provisions of the Medicaid Act. The Court notes that the injunctive relief that Plaintiff seeks in the Motion relies predominately on the claim stated in Count I.[3] Therefore, the Court's analysis of the likelihood of success on the merits for the purpose of the Motion will be limited to Count I. Specifically, this Court must determine whether Plaintiff is likely to succeed on the claim that Illinois is required to provide Plaintiff with coverage for placement in a residential treatment facility under the EPSDT program of the Medicaid Act.

---

[3] In Count I, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that Defendant is in violation of the EPSDT provision of the federal Medicaid Act because Defendant refuses to provide funds for medically necessary treatment in a residential treatment facility.

"Medicaid is a cooperative federal-state program that provides federal funding for state medical services to the poor." Frew v. Hawkins, 124 S. Ct. 899, 901 (2004). State participation is voluntary; however, once a state has chosen to participate, as Illinois has, it must comply with all federal requirements. Id. One requirement is that every participating State must have an "early and periodic screening, diagnostic, and treatment services" (EPSDT services) for persons under age 21. See 42 U.S.C. § 1396d(a)(4)(B).

EPSDT services include certain screening, vision, dental and hearing services (see 42 U.S.C. §§ 1396d(r)(1)-(4)), as well as "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in [§ 1396d(a)] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5).

The Seventh Circuit has interpreted the Medicaid Act to find that placement in a psychiatric residential treatment facility, where such

placement is determined to be medically necessary through EPSDT screening, is included "within the ambit of covered EPSDT services." Collins v. Hamilton, 349 F.3d 371, 374-75 (7th Cir. 2003). In Collins, the plaintiffs filed a class action complaint against the State of Indiana alleging that Indiana had violated the Medicaid Act by failing to provide medically necessary residential psychiatric treatment for Medicaid-eligible children under the age of 21. Id. at 372. The district court entered a permanent injunction requiring Indiana to provide Medicaid-eligible children under the age of 21 with psychiatric residential treatment facility placements where the placement was found to be medically necessary by EPSDT screenings. Id. The Seventh Circuit affirmed the district court, holding that Indiana's denial of any funding for placement in psychiatric residential treatment facilities to children when deemed medically necessary by EPSDT screening violated the Medicaid Act. Id. at 376.

In reaching this conclusion, the Seventh Circuit interpreted the EPSDT provisions of the Medicaid Act. First, the court noted that,

within the scope of EPSDT services for children, states are required to furnish "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." Collins, 349 F.3d at 374 (citing 42 U.S.C. § 1396d(r)(5)).

The court next noted that under § 1396d(a)(16), "inpatient psychiatric hospital services for individuals under age 21" are coverable Medicaid expenses so long as they abide by the directives of subsection (h). Collins, 349 F.3d at 374. The court found that the language in § 1396d(h) "broadens the definition of 'inpatient psychiatric hospitals' to include the services rendered in [psychiatric residential treatment facilities] by expressly incorporating other inpatient settings as specified by the Secretary in the promulgated regulations." Collins, 349 F.3d at 374-75 (citing § 1396d(h)(1)(A)). The court then noted that the Secretary has promulgated regulations "that specifically include

[psychiatric residential treatment facilities] as possible venues for patients under the age of 21 to receive psychiatric treatment." Collins, 349 F.3d at 375 (citing 42 C.F.R. § 441.151(b) ("Inpatient psychiatric services furnished in a psychiatric residential treatment facility as defined in § 483.352 of this chapter, must satisfy all requirements in subpart G of part 483 of this chapter governing the use of restraint and seclusion.")). The court then noted that Section 483.352 elaborates on this requirement by defining a "Psychiatric Residential Treatment Facility" as "a facility other than a hospital, that provides psychiatric services [. . .] to individuals under age 21, in an inpatient setting." Collins, 349 F.3d at 375 (citing 42 C.F.R. § 483.352). The court concluded: "Under the language in the Act and the provisions in the regulations, we find that [psychiatric residential treatment facilities] qualify as 'inpatient psychiatric hospitals,' and therefore placement in a [psychiatric residential treatment facility] is included within the ambit of covered EPSDT services." Collins, 349 F.3d at 375.

Here, Plaintiff seeks relief very similar to the relief the plaintiffs sought in Collins. Plaintiff has alleged that she is a Medicaid-eligible person under the age of 21 and that placement in a residential treatment facility is medically necessary according to recommendations by her physician and therapist. Plaintiff has also alleged that Defendant has refused to arrange for Plaintiff to receive the medically necessary treatment. Considering these alleged facts and the Seventh Circuit's decision in Collins, this Court concludes that Plaintiff has shown a strong likelihood of success on the merits of Count I.

2. Plaintiff Has Shown that No Adequate Remedy at Law Exists

Plaintiff has also sufficiently shown that no adequate remedy at law would suffice. Plaintiff is requesting declaratory and injunctive relief to require Defendant to provide certain medically necessary services. Further, at the May 24, 2012 hearing, Plaintiff's counsel stated that Plaintiff will be discharged from Riverside on May 25, 2012, at which point she will have no residential treatment facility alternative if the Court chooses not to enter a TRO. Under these circumstances, a

subsequent legal remedy, delivered weeks or months later, will not adequately address Plaintiff's claim absent preliminary injunctive relief.

3.  Plaintiff Has Shown that She Will Suffer Irreparable Harm If the TRO Is Not Granted

Plaintiff has also sufficiently shown that, if Defendant is not enjoined, Plaintiff will sustain substantial, irreparable harm that outweighs the harm that Defendant will suffer if the TRO is granted. See Joelner, 378 F.3d at 619.

At the May 24, 2012 hearing, Plaintiff's counsel stated that Plaintiff is scheduled to be discharged from Riverside on May 25, 2012 because neither Blue Cross nor the State of Illinois will pay for her to remain there. Plaintiff states that she does not have any other source of funding to pay for her placement at Riverside or at an alternative residential treatment facility. Plaintiff also states that she cannot safely reside at her home, where she does not have access to medically necessary services. Therefore, Plaintiff alleges, if discharged from Riverside without the requested TRO, Plaintiff would be forced to be admitted to a hospital to receive services to treat her emotional,

behavioral, and developmental disorders. Plaintiff states that she would suffer irreparable harm if forced to stay in a hospital, because treatment in a psychiatric hospital is far more restrictive than treatment in a residential treatment facility. Plaintiff cites the Seventh Circuit's decision in <u>Collins</u>, 349 F.3d at 376, in which the court stated: "There is a distinction between the acute care available in a psychiatric hospital setting and the less restrictive treatment provided by a residential facility." Plaintiff explains that psychiatric hospitals are locked facilities while residential treatment facilities are not. Plaintiff also states that children cannot attend school or other community events while at a psychiatric hospital, but they can attend such events while at a residential treatment center.

Plaintiff also alleges that spending prolonged time in a hospital in order to receive treatment would lead to unjustified isolation that is prohibited under the ADA, 42 U.S.C. § 12132. Plaintiff cites to <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 600-01 (1999), in which the Supreme Court stated that "confinement in an institution severely

diminishes the everyday activities of individuals including family relations, social contacts, work options, economic dependence, educational advancement, and cultural enrichment."

Based on the facts alleged in the Complaint and the Motion, the Court finds that Plaintiff has sufficiently shown that placement in Plaintiff's home or in a hospital would likely cause irreparable harm to Plaintiff. The Court also finds that Defendant will not suffer substantial harm by providing funds for Plaintiff to stay in a residential treatment facility in Illinois until this Court is able to hold a hearing on Plaintiff's pending Motion for Preliminary Injunction. Therefore, this Court finds that the irreparable harm that Plaintiff would suffer if no TRO is issued outweighs the harm that Defendant will suffer if the TRO is granted.

4. The TRO Will Not Harm the Public Interest

The Court further finds that ordering the State of Illinois to fund Plaintiff's medical treatment at a residential facility until this Court has ruled on the Motion for Preliminary Injunction will not harm the public interest. Therefore, the Court finds that issuing a TRO in this case will

not harm the public interest.

In sum, this Court finds that a TRO is required to prevent irreparable harm until a hearing on the motion for preliminary injunction can be held before this Court.

CONCLUSION

Accordingly, the Court GRANTS Plaintiff's Motion (d/e 11) and ORDERS as follows:

1. Defendants are ordered to pay for Plaintiff's placement at Lincoln Prairie Behavioral Health Center in Springfield, Illinois, beginning May 25, 2012 and lasting until the restraints of this Order dissolve.

2. A hearing on Plaintiff's Motion for Preliminary Injunction is set for June 7, 2012 at 4:00 p.m. This Order's restraints shall dissolve at the close of that hearing, unless extended before that date and time.

If Defendants fail to comply with the terms of this Opinion, Defendants will be in contempt of this Court and subject to sanctions.

IT IS SO ORDERED.

ENTERED: May 25, 2012

FOR THE COURT:

                                          s/ Sue E. Myerscough
                                     SUE E. MYERSCOUGH
                       UNITED STATE DISTRICT JUDGE