IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| S.B.,  by and through her father, W.B.,  ) | |
| ) | |
| Plaintiff,            ) | |
| ) | |
| v.                    ) | No. 12-cv-03077 |
| ) | |
| JULIE HAMOS, in her official capacity) | |
| as Director of the Illinois Department  ) | |
| of Healthcare and Family Services,    ) | |
| ) | |
| Defendant.          ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter comes before the Court on Defendant's Motion to

Dismiss Counts II, III, and IV of the Complaint (d/e 4).  For the reasons

that follow, the Motion is DENIED.

## I. BACKGROUND

On March 8, 2012, S.B., by and through her father, W.B.[1], filed a

four-count Complaint (d/e 1) against Defendant, Julie Hamos, in her

_____

[1] For purposes of clarity, the Court will refer to S.B. by her initials and will
refer to W.B. as Plaintiff.

official capacity as Director of the Illinois Department of Healthcare and Family Services.  The Complaint contains four counts.  Plaintiff seeks injunctive and declaratory relief in the first three counts: (1) Count 1, alleging a violation of the Early and Periodic Screening, Diagnostic, and Treatment (EPSDT) program of Medicaid and 42 U.S.C. § 1983; (2) Count 2, alleging a violation of the Americans with Disabilities Act (ADA) and 42 U.S.C. § 1983; (3) Count 3, alleging a violation of the Rehabilitation Act and 42 U.S.C. § 1983.  Plaintiff seeks money damages in Count 4, which is a claim for a violation of the Rehabilitation Act.[2]

According to the Complaint, Plaintiff, S.B., is a Medicaid-eligible, 15-year-old girl who suffers from the following conditions: ADHD (Combined Type), Post-Traumatic Stress Disorder, Oppositional Defiant

---

[2] The heading of Count IV reflects that it is also brought pursuant to § 1983. However, the prayer for relief only seeks compensatory damages under the Rehabilitation Act and Plaintiff's response to the Motion to Dismiss states that Plaintiff seeks compensatory damages pursuant to the Rehabilitation Act.  Therefore, it does not appear that Count IV is brought pursuant to § 1983.  This Court notes that Defendant raised an Eleventh Amendment argument in the motion to dismiss Count IV in a related case (J.T. v. Hamos, 12-3203) but does not do so in this case. In any event, compensatory damages pursuant to § 1983 are not available against Defendant in her official capacity.  See, e.g., Brown v. Budz, 398 F.3d 904, 918 (7th Cir. 2005) ("To the extent that Brown seeks monetary damages from defendants acting in their official capacity, those claims . . . are dismissed as they are barred by the Eleventh Amendment.")

Disorder, Depressive Disorder, Sexual Abuse Victim, Sexual Abuse

Perpetrator, and Mild Mental Retardation.  Cmplt. ¶¶ 1, 28, 41.  On

April 30, 2011, Plaintiff was admitted to Lincoln Prairie Behavioral

Health Center (Lincoln Prairie) in Springfield, Illinois.  Cmplt. ¶ 77.

After her discharge from Lincoln Prairie, Plaintiff was directly admitted

to Riverside Academy (Riverside) in Wichita, Kansas, a psychiatric

residential treatment facility.  Cmplt. ¶ 78.  Blue Cross/ Blue Shield (Blue

Cross), Plaintiff's private health insurance carrier, paid for her treatment

at Riverside through March 2, 2012.  Cmplt. ¶ 79.  While at Riverside,

Plaintiff attended school and participated in recreational activities.

Cmplt. ¶ 85.  When Plaintiff is in the hospital, she cannot attend school

and cannot leave the hospital at all.  Cmplt. ¶ 86.

Effective March 2, 2012, Blue Cross denied authorization for

Plaintiff's continued treatment at Riverside.  Cmplt. ¶ 80.  Plaintiff

alleges that Blue Cross also denied authorization for treatment in a step-

down residential treatment facility because Blue Cross alleged that such

treatment is not a covered benefit.  Cmplt. ¶ 81.

Plaintiff's therapist advised that Plaintiff should be placed in a "'step[-]down facility closer to [the] primary care givers upon successful discharge from Riverside Academy.'" Cmplt. ¶ 82; see also Cmplt. ¶¶ 93, 94 (alleging that Mary Dobbins, M.D., and Sarah Bahns LMFT have recommended that S.B. receive residential treatment). According to Plaintiff, S.B. cannot currently reside safely in her family's home and she is at risk for further hospitalization/institutionalization if she does not receive the recommended treatment in a step-down residential placement. Cmplt. ¶¶ 83, 84. However, Defendant has refused to arrange and provide funding for S.B. to receive residential treatment. Cmplt. ¶ 95. Plaintiff also alleges that the cost of treatment at a step-down residential treatment facility is approximately one-third the cost of treatment at a psychiatric hospital. Cmplt. ¶ 87.

Plaintiff asserts that she needs to be placed in a step-down residential treatment facility "for the maximum reduction of her mental disability and for the restoration of her to the best possible functional level." Cmplt. ¶ 88. Plaintiff alleges that "[u]nless [she] receives the

necessary intensive residential services, she will likely be at risk for many future hospitalizations." Cmplt. ¶ 89.  Plaintiff also alleges that she requires residential treatment "to correct or ameliorate" her mental and behavioral conditions. Cmplt. ¶ 90.

In Count I of the Complaint, Plaintiff alleges Defendant is violating the federal Medicaid Act, 42 U.S.C. § 1396 et seq., because Defendant has failed and continues to fail to provide S.B. with "medically necessary intensive home and community based services, community residential services, and/or residential mental health services" that Defendant is mandated to provide under the EPSDT provisions of the Medicaid Act. Cmplt. ¶ 100.  Plaintiff also alleges in Count I that this conduct violates 42 U.S.C. § 1983.  Cmplt. ¶ 101.

In Count II, Plaintiff alleges a violation of Title II of the ADA and a violation of 42 U.S.C. § 1983.  Specifically, Plaintiff alleges that S.B. is a qualified individual with a disability, the Illinois Department of Healthcare and Family Services is a public entity, and that Defendant discriminates against S.B. by failing to provide her services in the most

integrated setting appropriate to her needs.  Cmplt. ¶¶ 107, 108, 110.
Plaintiff further alleges that "[b]y failing to provide adequate home based
and community-based mental health/behavioral services, Defendant has
and continues to discriminate against the Plaintiff by unnecessarily
segregating her in violation of the ADA."  Cmplt. ¶ 115.

In Count III, Plaintiff alleges a violation of the Rehabilitation Act
and a violation of 42 U.S.C. § 1983.  Plaintiff alleges that S.B. is a
qualified individual with a disability under Section 504 of the
Rehabilitation Act.  Cmplt. ¶ 123.  Plaintiff alleges that Defendant
discriminates against S.B. by failing to provide her services in the most
integrated setting appropriate to her needs.  Cmplt. ¶ 125.

Finally, in Count IV, brought pursuant to the Rehabilitation Act
(see Footnote 2), Plaintiff alleges Defendant has intentionally
discriminated against S.B. by "establishing a system which requires her to
become institutionalized (hospitalized) in order to receive or access
intensive services to address her behavioral or emotional disorders, while
other persons are able to access community based services without having

to become institutionalized." Cmplt. ¶ 134.  Plaintiff further alleges that Defendant's actions constitute deliberate indifference because Defendant continues to administer a system that relies heavily on hospitalization despite the demonstrated advantages of community-based programs. Cmplt. ¶ 136.

Plaintiff seeks a declaratory judgment declaring unlawful the Defendant's failure to comply with the mandates of the Medicaid Act, ADA, and Rehabilitation Act and a permanent injunction enjoining Defendant from subjecting S.B. to practices that violate her rights under the Medicaid Act, ADA, and Rehabilitation Act.  Plaintiff also seeks money damages under the Rehabilitation Act, costs, and reasonable attorney fees.

## II. PROCEDURAL BACKGROUND

On May 22, 2012, Plaintiff filed a Motion for Temporary Restraining Order (TRO) and a Motion for Preliminary Injunction.  On May 24, 2012, the Court held a hearing on the Motion for a TRO and granted the Motion.  <u>See</u> Opinion (d/e 13).  On June 7, 2012, pursuant

to the agreement of the parties, this Court entered an Agreed Order (d/e 15) providing that Defendant would fund S.B.'s placement at Lincoln Prairie so long as S.B. (1) continued to pursue applications for services through the Illinois Department of Human Services in the Children and Young Adults with Development Disabilities–Residential Waiver or Support Waiver; and (2) complied and cooperated with all of the procedures required by the Department of Healthcare and Family Services and Illinois Department of Human Services.  The Agreed Order also provided that in the event S.B. was found eligible for the placement and/or services under either of the Waivers, and was accepted for placement and/or services, Defendant's obligation to pay for the services for S.B. at Lincoln Prairie shall terminate.

On May 2, 2012, Defendant filed an Answer to Count I and the Motion to Dismiss at issue herein.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule Civil Procedure 12(b)(6)

permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  For purposes of the motion, a court must accept as true all well-pleaded allegations contained in the complaint and draw all inferences in the light most favorable to the non-moving party.  Estate of Davis v. Wells Fargo Bank, 633 F.3d 529, 533 (7th Cir. 2011).  To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007).  Conclusory allegations

are "not entitled to be assumed true." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 680 (2009) (citing <u>Twombly</u>, 550 U.S. at 544-55).

## IV. ANALYSIS

Defendant seeks to dismiss Counts II, III, and IV.

A.    <u>Count II States a Claim Under the ADA</u>

Plaintiff brings Count II pursuant to Title II, the public services portion of the ADA and § 1983.  The relevant statutory provision provides as follows:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  The regulations pertaining to Title II require a public entity to "administer services, programs, and activities in the most integrated setting appropriate to the needs of the qualified individual with a disability."  28 C.F.R. § 35.130(d).

In  <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 597-98 (1999),

the United States Supreme Court held that "[u]njustified isolation . . . is properly regarded as discrimination based on disability." The Court recognized that institutionalizing individuals who could "handle and benefit from community settings" is stigmatizing and diminishes the life of those individuals. Id. at 600-01. The Court found that a State is obligated to place persons with mental disabilities in community placements rather than in institutions where (1) "the State's treatment professionals have determined that community placement is appropriate;" (2) "the transfer from institutional care to a less restrictive setting is not opposed by the affected individual;" and (3) "the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." Id. at 587.

Defendant argues this Court should dismiss Count II because, although Plaintiff complains that Defendant violated the integration mandate by failing to provide S.B. with home-based and community-based services, Plaintiff actually wants S.B. to be placed in an institution

(a psychiatric residential treatment facility).  Defendant contends "[i]t is far from clear why plaintiff asserts that failing to place S.B. in the residential placement that he desires for S.B. violates the integration mandate of the ADA."  Def. Mem. pp. 6-7.

Plaintiff denies that the allegations suggest S.B. seeks to be institutionalized.  Pl. Resp., p. 5.  Plaintiff responds that he has stated a claim because S.B. requests "treatment in a community based residential treatment setting where she can attend school and participate in other community activities."  Pl. Resp., p. 5, citing Cmplt. ¶¶ 85, 88.  Plaintiff alleges S.B. cannot attend school or participate in community activities when she is in a hospital.  Pl. Resp., p. 5, citing Cmplt. ¶ 86.  Plaintiff notes that S.B.'s physician has recommended she receive treatment in a residential treatment facility.  Pl. Resp., p. 6.  Further, Plaintiff asserts that the request for community based residential services can be accommodated given that community based residential services are less costly than hospital delivered services.  Pl. Resp., p. 6.  Finally, Plaintiff notes that the Seventh Circuit has recognized that residential treatment

facilities are less restrictive than psychiatric hospitals.  See Collins v.

Hamilton, 349 F.3d 371, 376 (7th Cir. 2003) (rejecting the argument

that services offered through inpatient psychiatric hospitals removed the

need for residential treatment).

The allegations in Plaintiff's Complaint are unclear in light of the

undefined terminology.  Plaintiff uses the term "step-down residential

placement," "step-down residential treatment facility," and "psychiatric

residential treatment facility" to describe the desired placement for S.B.

See Cmplt. ¶¶ 78, 81, 84.  Plaintiff alleges that while at Riverside (a

psychiatric residential treatment facility), S.B. can attend school and

participate in other recreational activities.  Cmplt. ¶ 85.  Yet, Plaintiff

also describes a "psychiatric residential treatment facility" as a restrictive

setting that severely limits a child from interacting with his or her family,

school, peers, and community.  Cmplt. ¶ 74.

However, construing the factual allegations in the light most

favorable to Plaintiff, the Court construes Plaintiff's Complaint as

seeking a less-restrictive placement (psychiatric residential treatment

facility) than an institution (hospital).  The Seventh Circuit has found, in the context of a placement in a psychiatric residential treatment facility, a "distinction between the acute care available in a psychiatric hospital setting and the less restrictive treatment provided by a residential facility."  <u>Collins</u>, 349 F.3d at 376.

In addition, Plaintiff alleges all of the elements of an integration mandate violation required by <u>Olmstead</u>.  Plaintiff alleges that a community-based residential services placement is appropriate, that S.B. wants to be placed in a less-restrictive setting than an institution, and that S.B.'s request for community-based residential services can be reasonably accommodated taking into account the resources available to the State.  Therefore, Count II states a claim under the ADA.

B.    <u>Count III States a Claim Under Section 504 of the Rehabilitation Act</u>

In Count III, Plaintiff alleges a violation of the Rehabilitation Act and § 1983.  The Rehabilitation Act prohibits public entities and recipients of federal funds from discriminating against any individual on the basis of disability:

> No otherwise qualified individual with a disability
> in the United States, as defined in section 705(20)
> of this title, shall, solely by reason of her or his
> disability, be excluded from the participation in,
> be denied the benefits of, or be subjected to
> discrimination under any program or activity
> receiving Federal financial assistance or under any
> program or activity conducted by any Executive
> agency or by the United States Postal Service.

29 U.S.C. § 794. A prima facie case under Section 504 of the

Rehabilitation Act requires a plaintiff allege the following four elements:

(1) that she is a handicapped individual under the Act; (2) that she is

"otherwise qualified" for the benefit sought; (3) that she was

discriminated against solely by reason of her handicap; and (4) that the

program in question receives federal financial assistance. Grzan v.

Charter Hospital of Northwest Indiana, 104 F.3d 116, 119 (7th Cir.

1997) (quotations and citations omitted).

Defendant first seeks to dismiss Count III on the same basis raised

in Count II–that Plaintiff has not stated a claim because S.B. seeks

placement in an institution. The Court will not dismiss Count III on this

basis either.

Defendant next seeks to dismiss Count III on the basis that no cause of action is stated under the Rehabilitation Act because Plaintiff must allege that S.B. is "otherwise qualified" for the benefit sought. According to Defendant, S.B. is not "otherwise qualified" because, absent the handicap, she would not have been eligible for placement in a residential mental health facility in the first place.

In support thereof, Defendant cites <u>Grzan</u>, 104 F.3d 116.  In <u>Grzan</u>, the Seventh Circuit found that the psychiatric plaintiff who complained about her counselor's sexual relationship with her was not "otherwise qualified" under the Rehabilitation Act because "[h]ad she not suffered from a psychiatric condition, she would not have qualified for Charter's program and would not have been treated, negligently or otherwise." <u>Id.</u> at 120-121.

However, <u>Grzan</u> is distinguishable.  Unlike the plaintiff in <u>Grzan</u> who complained about the medical treatment she received, Plaintiff herein is complaining that S.B. is being denied treatment in an integrated setting.  Plaintiff alleges S.B. has been discriminated against by being

denied community mental health services and forced to receive medically necessary treatment in an institutional setting.

As noted above, the United States Supreme Court held in Olmstead that unjustified isolation constitutes discrimination under the ADA.  This holding has been extended to the Rehabilitation Act, which is generally construed as coextensive with the ADA and which also contains an integration provision.  See  28 C.F.R. § 41.51(d) (requiring "the most integrated setting appropriate to the needs of qualified handicapped persons"); Washington v. Indiana High Sch. Athletic Ass'n, Inc., 181 F.3d 840,845-846 n. 6 (7th Cir. 1999) (ADA and Rehabilitation are "nearly identical" and "precedent under one statute typically applies to the other.")[3]

Specifically, the Seventh Circuit held, in Radaszewski v. Maram, 383 F.3d 599 (7th Cir. 2004), that the plaintiff stated a claim under the ADA and Rehabilitation Act where she alleged that Illinois' failure to

---

[3] "The chief difference between the two statutes is that the Rehabilitation Act applies only to entities receiving federal funding . . . . [and] the Rehabilitation Act requires that the exclusion be solely by reason of disability, while the ADA requires only that the exclusion be by reason of the disability."  Washington, 181 F.3d at 845 n. 5.  (Emphasis in original.)

fund private-duty nursing care (community-based care) constituted

discrimination.  Specifically, the Seventh Circuit found that the plaintiff

had sufficiently alleged the three elements set forth in <u>Olmstead</u>: the

plaintiff alleged (1) private-duty nursing care was appropriate care; (2)

the disabled individual and his family agreed to such care; and (3) the

State could reasonably accommodate the care for the disabled individual.

<u>Radaszewski</u>, 383 F.3d at 607, 612-13 (wherein the analysis focused on

the ADA but the Court held that it applied "with equal force" to the

Rehabilitation Act claim); <u>see</u> <u>also</u> <u>Grooms v. Maram</u>, 563 F. Supp. 2d

840, 855 (N.D. Ill. 2008) (finding that the plaintiff "may bring a claim

for violation of the integration mandate if he satisfies the three factors set

forth in <u>Olmstead</u> and <u>Radaszewski</u>"); <u>B.N. v. Murphy</u>, 2011 WL

5838976, at *6 (N.D. Ind. 2011) ("[i]n a case involving the potential for

forced institutionalization, this court must apply the <u>Olmstead</u> court's

analysis to the integration mandate under the ADA and R[ehabilitation]

A[ct]").

 Here, Plaintiff has alleged that community-based care is appropriate

for S.B., that S.B. consents to such care, and that the State can
reasonably accommodate the community-based care.  Cmplt. ¶¶ 82, 90,
91, 92, 93, 87, 138, 139.  As such, Plaintiff states a cause of action under
the Rehabilitation Act.

Finally, with regard to Count III, Defendant asserts that Plaintiff
cannot rely on § 1983 to sue Hamos in her official capacity for violations
of the Rehabilitation Act.[4]

"In order to seek redress through § 1983, . . . a plaintiff must assert
a violation of a federal <u>right</u>, not merely a violation of federal <u>law</u>."
<u>Blessing v. Freestone</u>, 520 U.S. 329, 340 (1997) (emphasis in original).
Whether a statutory provision creates a federal right depends on whether
(1) Congress intended that the provision in question benefit the plaintiff;
(2) the right is not so "'vague and amorphous' that its enforcement would
strain judicial competence"; and (3) the statute unambiguously imposes a
binding obligation on the State.  <u>Id.</u> at 340-41; <u>see</u> <u>also</u> <u>Bontrager v.</u>

---

[4] Defendant does not raise in her Motion a claim that Plaintiff cannot rely on
§ 1983 to sue Hamos in her official capacity for violations of the ADA, although she
does cite a case holding that § 1983 claims may not rest on the ADA.  <u>See</u> Def.
Mem., pp. 9-10, citing <u>Torrence v. Advanced Home Care Inc.</u>, 209 WL 1444448
(N.D. Ill. 2009).

Indiana Family & Social Servs. Admin., No. 11-3710, 2012 WL 4372524, at *2, ___ F.3d ____ (7th Cir. 2012).  If the federal statute creates an individual right, the Court must determine if Congress foreclosed a remedy under § 1983 either expressly or implicitly, "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.".  Blessing, 520 U.S. at 341.

In her Motion to Dismiss, Defendant does not discuss whether the Rehabilitation Act creates an individual right or contains a comprehensive enforcement scheme but cites two Northern District of Illinois cases for the proposition that, in this Circuit, a plaintiff cannot employ § 1983 to sue for violations of the Rehabilitation Act.  However, the law in this Circuit is mixed.  See Zachary M. v. Board of Educ. of Evanston Twp. High Sch. Dist. No. 202, 820 F. Supp. 2d 649, 662-63 (N.D. Ill. 2011) (noting conflict in the district courts whether a § 1983 action under the Rehabilitation Act is cognizable).  This Court would prefer to decide the issue after more substantial briefing by the parties.  See, e.g., Lindstrom v. W.J. Bauman Assoc., Ltd., 2006 WL 278858, at

*6 (W.D. Wis. 2006) (finding that the court did not need to consider undeveloped arguments). Therefore, the Motion to Dismiss on this basis is denied. Defendant is granted leave, however, to raise the issue again in a Motion for Summary Judgment.

C.    Count IV States a Claim for Damages Under the Rehabilitation Act

In Count IV, Plaintiff seeks money damages under the Rehabilitation Act. Although the Seventh Circuit has not decided the issue, several courts in this district (and courts in other Circuits) have held that compensatory damages are available under the Rehabilitation Act only if the plaintiff shows discriminatory intent. See Zachary M., 829 F. Supp. 2d at 662 (granting summary judgment in favor of defendants where no evidence supported the inference that the school district was deliberately indifferent); see also Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999) ("[I]ntentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights"); Duvall v. County of

Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).  That is, the plaintiff must show that the defendant acted with deliberate indifference.  Zachary M., 829 F. Supp. 2d at 662.  To show deliberate indifference, a plaintiff must show knowledge (i.e. notice that an accommodation is required) and deliberate conduct (as opposed to mere negligence).  Kennington v. Carter, 2004 WL 2137652, at *7 (S.D. Ind. 2004) (ADA case).

Defendant argues Plaintiff has not alleged deliberate indifference because S.B. has been given services, just not the precise type of services S.B. wants.  Plaintiff responds that he has sufficiently alleged deliberate indifference.  The Court agrees with Plaintiff.

Plaintiff alleges that Defendant is aware that many children with severe mental illnesses and emotional disturbances are unable to obtain medically necessary home and community based services.  Cmplt. ¶¶ 7-10 (referencing DHS reports purportedly regarding children not receiving community services).  Plaintiff further alleges that Defendant established a system of requiring Plaintiff to be institutionalized (hospitalized) to receive services for her behavioral or emotional disorders.  Cmplt. 134.

Plaintiff also alleges that Defendant relies heavily on hospitalizations despite "the demonstrated advantages of community-based programs." Cmplt. ¶ 136. This Court finds that Plaintiff has sufficiently alleged deliberate indifference.

## V. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss Counts II, III, and IV of the Complaint (d/e 4) is DENIED. Defendant shall file an Amended Answer on or before October 22, 2012.

ENTER: October 3, 2012

FOR THE COURT:

                    s/ Sue E. Myerscough
                    SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE